## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES ROBINSON,** | : | |
| Petitioner, | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 19-cv-00878-JMY** |
| | : | |
| **KEVIN KAUFFMAN, ET AL.,** | : | |
| Respondent. | : | |

**YOUNGE, J.**                                                                                      **January 30, 2025**

### I.  INTRODUCTION

Presently before the Court is James Robinson's Petition for Writ of Habeas Corpus (the "Petition") (ECF No. 1), filed pursuant to 28 U.S.C. § 2254. Petitioner James Robinson was convicted of third-degree murder and firearms charges in relation to the murder of Michael Brooks in June 2004. A jury sentenced Mr. Robinson to eighteen to thirty-six years in prison. Mr. Robinson has alleged several errors related to the handling of certain evidence and testimony presented in his trial (ECF No. 1), which were referred to Magistrate Judge Richard Lloret for a Report and Recommendation ("R&R"). Subsequently, Mr. Robinson timely filed his objection (ECF No. 56). Upon considering all papers submitted in support of this Petition and in opposition thereto, and for the reasons set forth in this Memorandum, it is hereby **DENIED**, and Judge Lloret's Report and Recommendation is **APROVED** and **ADOPTED**.

### II.  BACKGROUND AND PROCEDURAL HISTORY[1]

On the afternoon of June 11, 2004, Mr. Robinson, Michael Brooks ("Brooks"), Jared Stiff ("Stiff"), Hassan East ("East"), and Heath Caudle ("Caudle") gathered to play a game of craps on Caudle's porch. During the course of the afternoon, Robinson amassed a significant amount of money from the other participants, leading to a confrontation with Brooks, who accused him of failing to repay a

---

[1] The Honorable Jeffrey P. Minehart provided an in-depth account of the facts of the case. *Commw. v. Robinson*, No. CP-51-CR-00015522007, 2014 WL 8105001, at *1 (Pa. Ct. Com. Pl. May 29, 2014). The Pennsylvania Superior Court reviewed these facts and selected the information necessary for their review. This summary of events is a recitation of the Pennsylvania Supreme Court's adopted and approved version of the facts and testimonies.

previous gambling debt. During this altercation, eyewitnesses observed Robinson walk over to his pickup truck, where he retrieved a nine-millimeter handgun and discharged three to five shots towards the porch. One of these shots fatally hit Brooks in the neck, severing his spinal cord and numerous veins and arteries, leading to his death shortly thereafter.

Robinson's first trial took place in February and March of 2012 before the Honorable Lillian H. Ransom. This trial ended in a mistrial on March 8, 2012, due to the jury's inability to reach a verdict. Robinson's second trial took place in September of 2013 before the Honorable Jeffrey Minehart. At trial, the Commonwealth presented eyewitness testimony of Stiff, East, and Caudle, each of whom had previously identified Robinson as the individual who shot Brooks. Though these individuals testified that they did not observe the shooting at the second trial, the Commonwealth presented their signed statements to police and testimony from the first trial that they saw Robinson shoot Brooks. Further, testimony of his girlfriend at the time of the shooting was presented, who testified that Robinson admitted to her that he shot Brooks. *Commw. v. Robinson,* No. 3612 EDA 2013, 2015 WL 7302678, at *1 (Pa. Super. Ct. Apr. 14, 2015) ("Direct App. Op."). On September 24, 2013, a jury found Mr. Robinson guilty of third-degree murder and firearms charges. Philadelphia County Court of Common Pleas Docket, *Commw. v. Robinson*, CP-51-CR-0001552-2007 at 5–6 ("Philadelphia Docket"). He was then sentenced to eighteen to thirty-six years in prison.

Mr. Robinson timely appealed his conviction on four grounds: (1) Mr. Robinson challenged the trial court's decision to allow testimony regarding his and [Stiff]'s role as codefendants in an unrelated federal case, arguing that this violated a pre-trial ruling excluding such testimony; (2) Mr. Robinson argued that the trial court improperly limited the defense's ability to question [East] about the potential benefits of his cooperation with the government; (3) he asserted that his right to present a defense was denied by the court's limitations on presenting evidence from two individuals that he believes could have cast doubt on his guilt; and (4) he claimed that the trial court should have granted a mistrial after the prosecutor's improper remarks during closing arguments. (Direct Appeal Op. at *2). On appeal, the Pennsylvania Superior Court affirmed Mr. Robinson's conviction. (Direct App. Op. at *7). Thereafter, the

Pennsylvania Supreme Court denied Mr. Robinson's petition for allowance of appeal. *Commw. v. Robinson*, 128 A.3d 1206 (Pa. 2015).

Mr. Robinson timely filed a petition under the Post-Conviction Relief Act, 42 U.S.C. §§ 9541-46 ("PCRA"), and PCRA counsel was assigned. *Commw. v. Robinson*, No. CP-51-CR-0001552-2007 at 2 (Pa. Ct. Com. Pl. Dec. 16, 2016) ("PCRA Ct. Op."). PCRA Counsel filed a No Merit Finley-Turner letter[2] and a Motion to Withdraw as Counsel. (PCRA Ct. Op. at 2). The PCRA Court issued a notice of intent to dismiss, and Mr. Robinson responded. *Id.* On November 21, 2016, the PCRA court formally dismissed the petition. *Id.* Mr. Robinson *pro se* appealed, raising twenty-six grounds for relief. On review, the Pennsylvania Superior Court found that "[t]he PCRA court opinion comprehensively discusses and properly disposes of the questions presented" and affirmed. *Commw. v. Robinson*, No. 3794 EDA 2016, 2018 WL 632278, at *10 (Pa. Super. Ct. Jan. 31, 2018).

Mr. Robinson now brings this *pro se* petition for writ of habeas corpus (ECF No. 1). We referred Mr. Robinson's petition to Magistrate Judge Lloret, who issued a Report and Recommendation ("R&R") on February 13, 2024 (ECF No. 47). Judge Lloret's R&R recommended that Mr. Robinson's request for review be denied. Petitioner timely objected to Judge Lloret's R&R.

### III.   LEGAL STANDARD

#### A.   Exhaustion

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, before a federal court may issue a writ of habeas corpus for a person in state custody under a state court judgment, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To satisfy this requirement, a petitioner must have "fairly presented" the merits of his federal claims during "one complete round of the established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A federal claim is fairly presented to the state courts where the petitioner has

---

[2] A Finley-Turner letter is filed by defense counsel pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Pennsylvania v. Finley*, 481 U.S. 55 (1987) and is accompanied by a motion to withdraw the representation. Such a letter discusses all possible issues for appeal and describes why those issues are not viable.

raised "the same factual and legal basis for the claim to the state courts." *See Nara v. Frank*, 488 F.3d 188, 198–99 (3d Cir.2007), as amended (June 12, 2007).

### B. Procedural Default

A claim is procedurally defaulted when it has not been fairly presented to the state courts (i.e., is unexhausted) and there are no additional state remedies available to pursue, *see Wenger v. Frank*, 266 F.3d 218, 223–24 (3d Cir.2001); or when the claim was properly asserted in the state system but not addressed on the merits because of an independent and adequate state procedural rule, *see McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir.1999). A procedurally defaulted claim cannot provide a basis for federal habeas relief unless the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law," or "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To establish cause and prejudice, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Slutzker v. Johnson,* 393 F.3d 373, 381 (3d Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Petitioner has the burden to show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982); *see also Carrier*, 477 U.S. at 494; *Holland v. Horn*, 519 F.3d 107, 112 (3d Cir. 2008). To demonstrate a fundamental miscarriage of justice, a habeas petitioner must typically prove actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 324-26 (1995).

### C. Review on the Merits

Where a claim has been adjudicated by the state courts on its merits, habeas relief is proper only where the state's adjudication was (1) "contrary to," or (2) involved an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1)- (2); *Williams v. Taylor*, 529 U.S. 362, 364 (2000). Review under Section 2254(d) is highly deferential to the state court's decision. Factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption

by clear and convincing evidence. *See Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001) (citing 28 U.S.C. § 2254(e)(1)).

A decision is "contrary to" established federal law where it reaches a conclusion "'diametrically different, opposite in character or nature, or mutually opposed'" to the "'clearly established' decisions of the United States Supreme Court." *Wilkerson v. Klem*, 412 F.3d 449, 452 (3d Cir. 2005) (quoting *Williams*, 529 U.S. at 405). A state court decision involves an "unreasonable application" of clearly established federal law where it correctly determines the guiding legal principle but improperly applies the law to the facts. *Williams*, 529 U.S. at 413. To warrant relief, the state court's application of federal law must be objectively unreasonable. *Id*. at 409.

### D.  Ineffective Assistance of Counsel

A claim for ineffective assistance of counsel has two components: deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, a petitioner must establish that counsel's performance was deficient, meaning counsel's errors were "so serious [that] counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment" *Id*. A petitioner may show deficient performance by evidence of counsel's "ineptitude, inexperience, lack of preparation[,] or unfamiliarity with basic legal principles." *Gov't of Virgin Islands v. Weatherwax*, 20 F.3d 572, 579 (3d Cir. 1994) (internal citation omitted). Next, the petitioner must demonstrate that the deficient performance prejudiced petitioner's defense to the point that petitioner was deprived of a fair trial. *Strickland*, 466 U.S. at 687. Prejudice is established where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Establishing ineffective assistance of counsel is particularly challenging in the habeas context. "The standards created by *Strickland* and [§] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations omitted). On federal habeas review, "the question is not whether counsel's actions were reasonable" but rather "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

When parties timely object to specific portions of a Report and Recommendation issued by a United States Magistrate Judge, the District Court must engage in de novo review of only those issues raised on objection. *Bynum v. Colvin*, 198 F. Supp. 3d 434, (E.D. Pa. 2016). In this process, a court may 'accept, reject, or modify, in whole or in part, the findings and recommendations' contained in the report. 28 U.S.C. § 636(b)(1). "The court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 676 (1980).

## IV.    DISCUSSION

Petitioner alleges that the R&R should not be adopted because the state court's decision was incorrect. Upon review of these claims, Judge Lloret determined that none of the Petitioner's objections warrant granting habeas corpus relief. Because Petitioner's objection to the R&R is deemed timely, this Court will review the dispositive legal issues raised in the R&R.

### A.    **Petitioner's Confrontation Clause Claim Is Barred By Procedural Default**

Petitioner objects to Judge Lloret's conclusion that Mr. Robinson's confrontation clause claim is procedurally defaulted and ineligible for federal review. (Report and Recommendation, ECF No. 47). In stating his objection, Mr. Robinson asserts that the "[i]ssue was presented and raised on direct appeal . . . after objections during trial. Thus, preserving said issue." (Objection, p. 2).

A claim is procedurally defaulted where it has not been fairly presented to the state courts, and there are no additional state remedies available to pursue, *Wenger*, 266 F.3d at 223–24; or where the claim was properly raised in the state courts but not addressed on the merits because of an independent and state procedural rule, *see McCandless*, 172 F.3d at 255. Unless the petitioner can either show "cause for the default and actual prejudice as a result of the alleged violation of federal law" or "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," a procedurally defaulted claim may not provide a basis for federal habeas relief. *Coleman*, 501 U.S. at 750.

In his two-sentence objection to Judge Lloret's R&R, Mr. Robinson implies that he has fulfilled the exhaustion requirement: "issue is not procedurally defaulted for not fulfilling the exhaustion requirement." (Objection, p. 2). To satisfy the exhaustion requirement, a petitioner must fairly represent both the facts and

the legal theory relating to his federal constitutional claims to all levels of the state judicial system. *Nara*, 488 F.3d at 198–99. On direct appeal, Mr. Robinson raised the issue of whether the trial court erred by limiting defense counsel from examining the potential benefits Hassan East could gain from testifying for the government (including the dismissal of drug charges and possible further sentence reductions). (Direct App. Op. at *2). However, as Judge Lloret points out, "he did not assert that the trial court's actions violated his sixth amendment rights to be confronted with and examine witnesses against him." We agree. Because Mr. Robinson has not preserved this issue within his trial proceedings or on direct appeal, further review is unavailable. *Commonwealth v. Yandamuri*, 159 A.3d 503, 528 n.23. Beyond claiming that he "preserved this issue on appeal," Mr. Robinson's objection lacks any argument as to why Judge Lloret's conclusions on this issue might be incorrect. Therefore, we concur with Judge Lloret's findings, and accordingly adopt Subsection A of the Discussion section from the Report and Recommendation.

### B. <u>Petitioner's Claim of Improper Exclusion of Favorable Evidence Fails</u>

Petitioner additionally alleges that the Court should decline to adopt Section B of the R&R discussion. Robinson hoped to introduce two police statements at his trial, one from a witness named Barbara Dantzler and the other from Robert Larry. Ms. Dantzler worked at the airport and told her supervisor that her grandson confessed to the murder. Robinson alleges that the police officers failed to pursue that lead, even though Ms. Dantzler later admitted she lied to her employer to miss work and told the police that she didn't even know the name of the victim.

As for the second witness, the decedent's family hired a tow truck company to remove his car. During the trial there was ample testimony that the decedent kept a large amount of money in the car. As the truck towed the vehicle away, two men, one of them being Mr. Robert Larry, followed it. (Trial Transcripts, ECF No. 46). Mr. Larry suggested that the murder may have been related to a scheme to rob Mr. Brooks, who was known to carry significant amounts of cash. (R&R p. 12) Robinson contends that the police ignored evidence of other suspects like Larry's statements to pin Mr. Brooks' murder on Mr. Robinson.

The Petitioner argues that the exclusion of testimony from Ms. Dantzler and Mr. Larry interfered with his constitutional right to present evidence in his defense. Specifically, Mr. Robinson cites to *Washington v. Texas*, stating that this dismissal was in direct violation of such. He further cites *Brecht v. Abrahamson*, stating that "these constitutional errors are substantially injurious and violate the Brecht standard." (Objection to R&R, ECF No. 56).

The Court concurs with Judge Lloret that the Pennsylvania Superior Court reasonably resolved this issue on direct appeal, and as such, it should be denied. Habeas relief is available only when the state court adjudication was (1) "contrary to," or (2) involved an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1)-(2). As Judge Lloret points out, a habeas court cannot revisit a state court's determination of a state law issue. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Unlike in *Washington*, where the trial court failed to admit crucial testimony, this case involves Mr. Robinson's attempt to submit written statements from two individuals who did not witness the events and were not essential for his defense. This distinction supports the conclusion that Mr. Robinson's rights under *Washington* were not violated.

In reference to the *Brecht* standard cited by Petitioner, the Court agrees with Judge Lloret's analysis and adopts his conclusion that Mr. Robinson failed to establish that the exclusion of Dantzler's testimony had a substantial and injurious effect on his trial. Under the *Brecht* standard, reversal is only required if the error had a "substantial and injurious" effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619 (1993). As Judge Lloret correctly points out, Mr. Caudle's testimony at trial, coupled with trial counsel's closing argument, were enough to establish the defense's theory that "the police were so motivated to pin Mr. Brooks' murder on Mr. Robinson that they ignored evidence pointing to other suspects and coerced witnesses to lie to corroborate their story." (R&R p. 15). Indeed, Mr. Caudle, a gambling associate of Mr. Robinson and the owner of the residence where the shooting occurred, testified at trial that he was coerced by the police to implicate Robinson (N.T. 9/19/2013 at 69:6–70:5; 80:4–16; 90:3–9) and that he only signed the statement so he could go home. (N.T. 9/19/13 at 87:22–88:7; 92:11–14). Additionally, trial counsel emphasized his theory multiple times during his closing argument and

throughout the trial. This is sufficient for us to agree with Judge Lloret's analysis—under the *Brecht* standard, exclusion of Dantzler's testimony did not have a substantial and injurious effect on his trial. Thus, we adopt Subsection B from the discussion section in the Report and Recommendation.

### C.   **Petitioner's Claim of Ineffective Assistance of Counsel is Procedurally Defaulted**

Next, Mr. Robinson objects to Judge Lloret's determination that his claim of ineffective trial counsel is procedurally defaulted. He further objects to the conclusion that he failed to show cause and prejudice or a miscarriage of justice sufficient to overcome this procedural default. We disagree with Petitioner.

Mr. Robinson did not pursue his ineffective trial counsel claim during the state review process, thereby barring him from raising it now under the waiver and time limit provisions of the PCRA. 42 Pa. C. S. §§ 9543(a)(3), 9545(b)(1). Federal courts may not consider the merits of procedurally defaulted claims unless the applicant establishes "cause and prejudice" or a "fundamental miscarriage of justice" to excuse his or her default. *Coleman*, 501 U.S. at 750; *see also* McCandless, 172 F.3d at 261. This standard has not been met.

Mr. Robinson contends that denying this matter is a violation of *Martinez v. Ryan*, a position we find unpersuasive. In *Martinez v. Ryan*, the Supreme Court recognized that while a petitioner cannot bring a separate claim based on the ineffectiveness of counsel in collateral proceedings, he may argue that such ineffectiveness caused the procedural default of a connected claim related to the ineffectiveness of counsel. *Martinez v. Ryan*, 566 U.S. 1, 12, 17 (2012). The *Martinez* Court specifies the criteria for an exception to the standard rule of procedural default: a petitioner must show that (1) his ineffective assistance of trial counsel claim has "some merit," and (2) his counsel during the initial review of his post-conviction appeal was ineffective under *Strickland* for not raising or preserving this issue adequately. *Workman* v. *Sup't SCI Albion*, 915 F.3d 928, 937 (3d Cir. 2019) (citing *Martinez*, 566 U.S. at 14). To pass the first prong, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Judge Lloret found

that Mr. Robinson's ineffectiveness claim is unfounded because, contrary to the allegations made in the habeas petition, the trial counsel did object to the testimony in question, as evidenced by the trial transcript. Judge Lloret further concludes that because the underlying ineffective assistance of counsel lacks merit, PCRA counsel was not ineffective for failing to raise it, and Mr. Robinson has not demonstrated a valid cause to bypass his procedural default. (R&R, pp. 18-20). Moreover, in his objection to the R&R, Mr. Robinson failed to provide any reason as to why he objects to Judge Lloret's findings. Instead, he broadly asserts: "The incompetence of a successive attorney allows the ineffectiveness of the first attorney to go unchecked", and merely restates the issue without further explanation. For these reasons, we concur with Judge Lloret's Report and Recommendation on this issue and affirm that Mr. Robinson's claim of ineffectiveness of counsel is procedurally defaulted.

### D. Petitioner's Claim for Prosecutorial Misconduct Fails

Lastly, Mr. Robinson disputes Judge Lloret's conclusion that there was no violation of his Fifth Amendment rights. Mr. Robinson points to comments from the prosecution, which suggested the jury should infer guilt from Mr. Robinson's choice not to testify. While Mr. Robinson concedes that his defense counsel objected and that Judge Minchart properly instructed the jury to disregard the inappropriate statements made by the prosecution, he contends that despite these measures, "the bell could not be unrung." (Objection, pp. 2-3)

Mr. Robinson is correct that the Fifth Amendment "forbids … comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. Cal.*, 380 U.S. 609, 615 (1968); *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). However, Mr. Robinson's suggestion that prosecutorial misconduct in this case rose to a level such that more action would be warranted, is unsupported by case law. This circuit, in *US v. Rivas* found that "a mistrial is not required where improper remarks were harmless . . ." U.S. v. Rivas, 493 F.3d 131, 140 (3d Cir. 2007). Similar to the case here, "it is clear that [the contested remark] did not affect the outcome of the trial." *Id.* In coming to his conclusion, Judge Lloret references ample evidence through which the jury could conclude that Mr. Robinson is guilty. (R&R, p. 25). Specifically, Mr. East, Mr. Caudle, both of whom were present on the night of the shooting,

had previously identified Mr. Robinson as the perpetrator of the crime. (*Id.*) Additionally,  Tallena Drayton, Mr. Robinson's girlfriend at the time of the shooting, testified that Mr. Robinson confessed to her that he shot Mr. Brooks after they had a disagreement. (*Id.*) We agree with Judge Lloret that Mr. Robinson has not shown that he was prejudiced by the Prosecutor's statements, and therefore, his claim fails on the merits. Accordingly, we adopt Subsection D of the discussion section from the Report and Recommendation.

**V.    CONCLUSION**

Upon review of Judge Lloret's analysis in his February 13, 2024, Report & Recommendation, the Court overrules Mr. Robinson's objections, adopts Judge Lloret's Report and Recommendation, and denies Mr. Robinson's petition for habeas relief. An appropriate order follows.

BY THE COURT:

/s/ John Milton Younge
**Judge John Milton Younge**